# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| JEFFREY GONZALES, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. CIV-21-650-R |
| ) | |
| ) | |
| FORD AUDIO-VIDEO SYSTEMS, ) | |
| LLC, an Oklahoma limited liability company, ) | |
| ) | |
| Defendant. ) | |

## COMPLAINT

Plaintiff Jeffrey Gonzales for his causes of action against Defendant Ford Audio-Video Systems, LLC, an Oklahoma limited liability company, states as follows:

## THE PARTIES

1. Plaintiff Jeffrey Gonzales ("Gonzales") at all relevant times was living and working in the State of Oklahoma, within the bounds of the Western District of Oklahoma.

2. Defendant Ford Audio-Video System, LLC ("Ford" or "Defendant") is an Oklahoma limited liability company with its principal place of business in Oklahoma, which is in the Western District of Oklahoma.

## JURISDICTION AND VENUE

3. This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331 because this is a civil action arising under the Americans with Disabilities Act ("ADA").

4. Venue is proper in the Western District of Oklahoma under 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the claims occurred in the Western District of Oklahoma.

5. After timely filing a charge of discrimination on June 16, 2020 and receiving a notice-of-suit-rights letter on April 30, 2021, Gonzales has timely filed this suit within 90 days of the issuance of his notice-of-suit-rights letter. Thus, Gonzales has exhausted his administrative remedies.

## FACTS

6. In July 2019, Ford hired Gonzales as a Marketing Coordinator. Gonzales reported to former Marketing Manager Brooke Walters ("Walters") and Marketing Director Paul Leach ("Leach").

7. During his time at Ford, Gonzales performed his job duties and responsibilities in a satisfactory manner.

8. Gonzales worked at Ford for eight months before he was terminated on April 6, 2020, under the guise of insufficient work due to the Coronavirus.

9. On or around November 14, 2019, Gonzales had a conversation with Leach, where Leach asked multiple direct questions regarding Gonzales's health and family medical history. Leach asked questions regarding Gonzales's mental health and about his family's history of dementia. Up to this time, no one had mentioned noticing memory issues to Gonzales.

10. On February 26, 2020, Leach and Walters called Gonzales to a meeting. During this meeting, Leach and Walters alleged that Gonzales had "concerning memory-

loss issues" and that they had job-performance concerns. Over thirty minutes, Leach and Walters asked Gonzales personal questions about his medical history and home life. Gonzales answered these questions, revealing a great deal of personal medical information. After this meeting, Gonzales submitted his rebuttal to the job-performance inquiries and referenced the medical questions/comments that were made.

11. The next day, on February 27, 2020, Gonzales was called to the Ford HR office to discuss the February 26 meeting. He spoke with Rise Amorin. Gonzales said that he believed the medical questions that he had been asked were inappropriate, and Ms. Amorin agreed. During this meeting when Gonzales tried to speak about the medical questions that Leach and Walters asked, he was told that Ford was not allowed or qualified to ask medical questions and to focus on the job-performance related complaints. After this meeting, Gonzales was told there would be a follow up in two weeks regarding his progress in the areas he supposedly needed to improve. The follow-up never occurred.

12. On March 18, 2020, Ford began allowing employees to submit requests for authorization to work from home due to the Coronavirus pandemic. Gonzales submitted his request with the reason being that his girlfriend works at a primary-care clinic—putting him at a higher risk of exposure to the virus. In continuing to request that he be able to work from home, Gonzales also cited his asthma. Gonzales was treated differently than other team members because he was not authorized to work from home and was not given remote access.

13. On March 23, 2020, Gonzales asked Leach again if he was authorized, and Leach said that his request was still under review. When the updated list came out later the

same day, Gonzales was still not authorized. Upon Gonzales's further inquiry, Leach said he would ask about it. Gonzales was never given a clear explanation for why his request was taking longer to review than the others' who had already been approved. All communications regarding Gonzales's authorization came from Leach.

14. Between March 23 and April 6, 2020, despite the marketing department's losing two members and Gonzales's having multiple open projects and a full list of work assignments, Leach reported that he could work only one day per week and that if he did not want to work one day per week, he would be furloughed or laid off. When Gonzales asked what Leach meant, Leach explained that Gonzales would essentially be fired.

15. When Gonzales told Leach that he could not work only one day per week, he was terminated, citing lack of available work due to Coronavirus. The true reason for Gonzales's termination was Leach's discriminatory animus because of Gonzales's being regarded as having a disability and retaliation for bringing Gonzales's protected activity in opposing his employers' questions/comments about Gonzales's personal medical history presented during the disciplinary meeting to the Ford HR department.

### FIRST CAUSE OF ACTION—WRONGFUL TERMINATION/ DISPARATE TREATMENT IN VIOLATION OF THE AMERICANS WITH DISABILITIES ACT

16. Gonzales incorporates all the above paragraphs by reference.

17. Ford regarded Gonzales as having a disability in the form of a perceived mental impairment. Gonzales also suffered from severe asthma which substantially affected major life activities by restricting his ability to breathe under certain circumstances

and jeopardizing his health and wellbeing during the COVID-19 pandemic. Therefore, Gonzales had disabilities under the ADA.

18. Gonzales was able to perform the essential functions of his job with or without reasonable accommodations.

19. Ford treated Gonzales differently than his peers, denied him remote access to work from home during the COVID-19 pandemic, and fired him because of the discriminatory animus based on Gonzales's actual or perceived disability.

20. Ford would not have taken these actions if Gonzales had not had disabilities.

21. As a direct and proximate result of Ford's wrongful conduct, Gonzales sustained substantial economic loss, including past and future compensation, and other economic benefits. Gonzales has further sustained loss of financial stability, peace of mind, and future security, and has suffered embarrassment, humiliation, mental anguish and emotional distress and discomfort, and loss of enjoyment of life, all to his detriment and damage in an amount in excess of $75,000.00.

WHEREFORE, Gonzales demands judgment against Ford:

(1) That judgment be entered declaring that Ford unlawfully discriminated against Gonzales in violation of the ADA, as amended;

(2) That Ford be ordered to make Gonzales whole by providing back pay and any and all other remedies authorized by the ADA, as amended, including but not limited to salary and benefits, and accrued interest from the date of his termination until entry of judgment against Ford and for compensatory damages for Gonzales's mental anguish, pain and suffering, and other non-pecuniary losses, including punitive damages allowed by the ADA;

(3) That Gonzales be awarded costs and expenses of this litigation including reasonable attorney's fees and expert witness fees; and,

(4) That Gonzales be granted such legal and equitable relief as the Court deems just and proper.

**SECOND CAUSE OF ACTION—RETALIATION FOR ACTIVITY PROTECTED UNDER THE AMERICANS WITH DISABILITIES ACT**

22. Gonzales incorporates all the above paragraphs by references.

23. Gonzales engaged in protected activity by requesting an accommodation for his asthma to work from home and by opposing his employer's questions/comments about his personal medical history presented during the disciplinary meeting to the Ford HR department.

24. Because of Gonzales's protected activity, Ford treated him differently from his peers, refused to let him work from home during the COVID-19 pandemic, and fired him.

25. As a direct and proximate result of Ford's wrongful conduct, Gonzales sustained substantial economic loss, including past and future compensation, and other economic benefits. Gonzales has further sustained loss of financial stability, peace of mind, and future security, and has suffered embarrassment, humiliation, mental anguish and emotional distress and discomfort, and loss of enjoyment of life, all to his detriment and damage in an amount in excess of $75,000.00.

WHEREFORE, Gonzales demands judgment against Ford:

(1) That judgment be entered declaring that Ford unlawfully retaliated against Gonzales in violation of the ADA, as amended;

(2) That Ford be ordered to make Gonzales whole by providing back pay and any and all other remedies authorized by the ADA, as amended, including but not limited to salary and benefits, and accrued interest

from the date of his termination until entry of judgment against Ford and for compensatory damages for Gonzales's mental anguish, pain and suffering, and other non-pecuniary losses, including punitive damages allowed by the ADA;

(3) That Gonzales be awarded costs and expenses of this litigation including reasonable attorney's fees and expert witness fees; and,

(4) That Gonzales be granted such legal and equitable relief as the Court deems just and proper.

### THIRD CAUSE OF ACTION—FAILURE TO ACCOMMODATE IN VIOLATION OF THE AMERICANS WITH DISABILITIES ACT

26. Gonzales incorporates all the above paragraphs by reference.

27. Gonzales has a physical impairment in the form of asthma, which substantially affects his ability to breathe.

28. To cope with his condition, Gonzales uses an inhaler and must be careful to avoid inhaling dust or contracting respiratory illnesses.

29. Gonzales was particularly concerned about his health and wellbeing during the COVID-19 pandemic, due to his asthma.

30. As a reasonable accommodation for his disability, Gonzales submitted his request to work from home like his peers during the COVID-19 pandemic.

31. Rather than grant Gonzales's requested accommodation or engage in the interactive process by providing an alternative reasonable accommodation, Ford refused to let Gonzales work remotely like his peers, and ultimately terminated Gonzales.

32. As a direct and proximate result of Ford's wrongful conduct, Gonzales sustained substantial economic loss, including past and future compensation, and other economic benefits. Gonzales has further sustained loss of financial stability, peace of mind,

and future security, and has suffered embarrassment, humiliation, mental anguish and emotional distress and discomfort, and loss of enjoyment of life, all to his detriment and damage in an amount in excess of $75,000.00.

WHEREFORE, Gonzales demands judgment against Ford:

(1) That judgment be entered declaring that Ford unlawfully failed to accommodate Gonzales in violation of the ADA, as amended;

(2) That Ford be ordered to make Gonzales whole by providing back pay and any and all other remedies authorized by the ADA, as amended, including but not limited to salary and benefits, and accrued interest from the date of his termination until entry of judgment against Ford and for compensatory damages for Gonzales's mental anguish, pain and suffering, and other non-pecuniary losses, including punitive damages allowed by the ADA;

(3) That Gonzales be awarded costs and expenses of this litigation including reasonable attorney's fees and expert witness fees; and,

(4) That Gonzales be granted such legal and equitable relief as the Court deems just and proper.

Respectfully submitted,

Travis E. Harrison
Woodrow K. Glass, OBA#15690
Jonathan M. Irwin, OBA#32636
Travis E. Harrison, OBA #33520
Ward & Glass, L.L.P.
1601 N. W. 36th Street, Suite 100
Norman, Oklahoma 73072
405-360-9700
405-360-7902 (fax)
woody@wardglasslaw.com
jonathan@wardglasslaw.com
travis@wardglasslaw.com
ATTORNEYS FOR PLAINTIFF

**JURY TRIAL DEMANDED**
**ATTORNEY'S LIEN CLAIMED**